All right. I think we're ready to begin. We'll start today with Bryant versus Stephan and let me just check with counsel. Mr. Ross, are you there? Can you hear me? Yes, Your Honor, here. All right. And Mr. Van, Van, is it? Yes, Your Honor, I'm here. Oh, it's Ms. Oh, Lindsay Van, right. Okay. And who else do we have on? Thank you. Excuse me, sir. Mr. Refio, you're in the second case, sir. Would you please turn up your video and mute your audio? Yes, I will. Thank you. Sorry about that, sir. Okay. I think we're all ready to go. And we'll start with Mr. Ross. Thank you, Your Honor. May it please the court. Simple rules are often the most difficult to follow. A simple but fundamental rule of habeas review under 2254 D is that relief is unwarranted unless the state court adjudication involved an unreasonable application of Supreme Court precedent or is based on an unreasonable determination of the facts. Time and time again, we're reminded that it's not enough for a state court to be merely wrong. An incorrect adjudication is fundamentally different from an unreasonable one. It's all too tempting for us to sit in the shoes of the state court judge and assess whether or not that judge got it right or wrong. But that's not the issue under 2254 D. Federal habeas review is designed to correct extreme malfunctions in state criminal justice systems, not a substitute for ordinary error correction through repeal. As applied to this case, the district court erred and should be reversed because the scope of its review exceeded that which is permissible under 2254 D. The district court held in ground one, dealing with Mr. Bryant's right to a competent jury under the Sixth Amendment, the court held that the state adjudication was an unreasonable application of Supreme Court precedent and an unreasonable determination of the facts. And the district court was wrong. Well, Mr. Ross, the PCR court found that, quote, juror 342 testified she heard all testimony during the guilty phase and that there was not, quote, a sufficient showing that juror 342 missed material testimony at trial or that her hearing difficulty was of such degree as to indicate that she missed material. But in fact, the juror herself testified that she had trouble hearing and missed some of the material. So how is that not an unreasonable finding by the PCR court? Well, step one, your honor, is to identify what standard is. And the PCR court actually identified this issue at the hearing and asked the court or asked the parties, is there any law that defines what a competent juror is? And quite frankly, there is no law or standard from the Supreme Court identifying what is a competent juror and what is not a competent juror. What disability? Well, one, are you saying that if someone can't hear the testimony fully, they are still competent? To sit as a juror without without accommodation? I mean, maybe there's a reasonable accommodation, but as I understand it, this juror refused to wear a hearing aid or was quite defensive about her hearing, according to the testimony of her husband. And perhaps that's the reason she was sometimes reluctant to admit that she couldn't hear, although she did ultimately admit she could not hear at times. Your honor, one of the open questions from the Supreme Court precedent as it stands now is, what is the standard we use to assess whether or not somebody can hear or whether or not they can't hear? Do we look at it from a qualitative perspective, a quantitative perspective? We look at the amount of testimony that the juror heard? Or do we look at whether or not any testimony missed was material? Based on what? Based on what she says? She says she missed some testimony. She repeatedly tells the court she can hear over and over again. She says she can't hear. But how does she know what she can and cannot hear if she can't hear? She can't tell you what she didn't hear because she didn't hear it. But looking at the objective record, the trial judge repeatedly had concerns with the juror's hearing. The solicitor, the state, even had concerns with the juror's hearing and wanted her removed, and then the husband also testified, of course, that she had a problem hearing. So I don't know how we're supposed to take her word for it that she could hear everything. She doesn't know what she heard. We're not taking her word for the amount of testimony she heard or whether or not she missed anything. At the end of the day, there was consensus by all the members in that courtroom. Trial judge believed she was qualified. State believed she was qualified. Two defense attorneys believed she was qualified. Now the defense attorney testified at the PCR hearing that that juror never should have been on the jury, right? He testified in hindsight, and that's another error that the district court made is in reviewing trial counsel's performance, we don't judge that in hindsight. And that trial counsel's testimony is riddled with an assessment in hindsight. He says, when I read the transcript, I didn't realize how deaf she was. So what matters is at the time, whether or not that trial counsel believed this particular person was qualified. And the juror's statement that maybe I missed some, she's also saying she heard everything as well. The burden is on Mr. Bryant to show, number one, what she missed. We don't know if she missed... I haven't been on an airplane in a while, but there's that thing on the seat in front of you that says, if you can't read English, blah, blah, blah. And it's written in English. So if I can't read English, how's that sign any good to me? And that sort of reminds me of this. If she can't hear, she can't tell you what she can't hear. So I don't know how Mr. Bryant could ever make that showing. How? How could he? This particular juror had a subpoena. She appeared at the PCR court, apparently going to testify. Mr. Bryant could have put her on the stand and asked, what do you recall in mitigation? What do you recall in aggravation? Give us your recollection of the facts of this case and then compare that to what facts actually are revealed in the transcript. So a showing can be made. Mr. Bryant simply didn't do it. And getting back to the standard... I'm sorry. Can I just clarify? We're only talking about the sentencing phase, right? Not the guilt phase. Didn't the district court find that any error was harmless in the guilt phase? And there's no appeal on that, right? Yes, Your Honor. The district court found there was no appeal on the guilt phase because the evidence of guilt was overwhelming. Right. OK, go ahead. I'm sorry. Let me ask that. I want to ask the question. The PCR court held essentially that the juror did not have a hearing difficulty of such degree as to indicate she missed material. What does he mean by that? What does he mean by the material? Does he mean by everything? Or is the material being used as an adjective? I couldn't quite follow that. As I recall, the district court's order was material testimony. And that raises the issue of going back to what is the standard that the Supreme Court has given us. There really is not a standard in place. The best precedent we have on this issue comes from Jordan versus Massachusetts, Tanner versus the United States. They both recognize that you have a right to a physically and mentally competent jury. But again, the Supreme Court has never defined exactly how we figure out whether this particular juror is qualified. So so you so so if I understand you correctly, you're not saying that she did not have any difficulty in hearing. That's not your that's not your position, is it? Your Honor, it's clear from the record two things. Number one, she had an impairment. And number two, she's not deaf. So from that perspective, my point is, do we need to come to a conclusion like that to hold for you that that she didn't have any difficulty? I think simply having a hearing impairment standing alone is not going to disqualify someone from service. That's why the devil is always in the details. You've got to figure out the extent of the hearing impairment. And you've got some type of metric on how you assess that jurors ability to consume and evaluate the testimony. So that's why I asked about the missed material and got your interpretation of it. At least you understand that you believe he's referring to material testimony, not that he missed material, meaning everything in the process. As I read the order, it's material testimony. Can I ask a question? And the courts have over the years had fairly regularly issues about sleeping jurors, where a juror falls asleep in the afternoon or during a period of time. Are you aware of any court that has established some kind of standard, how long you can sleep before you have to be disqualified? In other words, this is a little bit along the same lines as you're talking about what evidence was missed or not. And you and you've agreed that or you've suggested that the test might be material evidence. I'm wondering whether there is any suggestion as to how much time or what percentage or what degree of juror can miss before that juror becomes incompetent. Because I think most of the cases have allowed, not allowed, but overcome a certain level of sleeping during a trial without disqualification. And I'm just wondering, is there some standard or something we should be looking at in terms of time period or preoccupation with sleep or with not hearing? As I understand the case law, Your Honor, the various courts have looked at the amount and materiality. I believe different courts have looked at, again, the amount of testimony missed. Other courts have looked at whether or not it's material testimony. So that just, that reinforces the debatability of the rule that would be applied here. That reasonable courts could look at different metrics in assessing whether or not a juror is qualified. Are they missing 60%, 70%? Are they missing something that's critical to the issues at hand or are they missing something that's cumulative? So as I understand, there's a host of case law dealing with sleeping jurors and courts have addressed it in various ways, which would simply reinforce the reasonableness of the PCR court in this case because there is no firm standard in place. And when you don't have a firm standard, courts have a lot more flexibility in applying the rule. Does that answer Your Honor's question? Well, it points up the problem. I don't know if it really answers it. It's a difficult call because this record is somewhat speckled. I mean, every time the trial judge asked the woman whether she was hearing that, she would usually say, yes, I heard that. I heard that. On the other hand, I think she gave the juror three tests, at least three, and she passed two and failed one. And so I don't know where that leaves us either. It's in the same never never land between the two posts you were talking about or in the case of sleeping jurors between the length of sleep and amount of material missed. One thing is clear from the facts in this case, Your Honor, is that, again, we know she's not deaf. And we know that based on during her various responses to the court, she's not simply answering yes or no questions. Had she answered simply in yes or no, then we may be able to infer that she was just flipping a coin as to what was coming out of the judge's mouth. But repeatedly, she's answered several questions in full sentences. She explained the presumption of innocence to the judge. She explained that she needed to read lips to the judge. And at one point, she's asked where her church is, and she gives a description of where to get to her church. So she's not answering in just yes or no questions. We also know that the lawyers are making efforts to accommodate this issue. At different points in the transcript, you can see where the trial attorneys are physically moving in the courtroom. That's at record 188, 190, and 194. One of the trial attorneys physically picks up the podium and moves it so that he can be within eye range so that juror can actually see his lips and read his lips. You mentioned one specific instance where, at the culminating moment where the trial judge is assessing this juror's qualifications, the issue about the blue dress, maybe blue dress. From experience, when a judge looks you in the eyes and asks you a question, sometimes you can see the judge's lips moving and you know the judge is talking to you, but you're not listening to what's coming out of her mouth. You're thinking of something else. So that is not the smoking gun piece of evidence. Well, I didn't suggest it was because she had also been asked two other times. One, there was some evidence that she was nudged, but it looked like she clearly passed one or two. So she was hearing something. There's no question about it. But with the blue dress, she did say, I didn't hear that. And so the question is whether she wasn't paying attention or she didn't hear it because of an impairment. And I suppose it's probably her impairment, but it was a mixed bag. It would be up to self-assessment. Doesn't your example of the lawyer having to turn the podium around and face directly toward her underscore the argument that she could have been missing, as she, I think, indicated parts of the testimony? If somebody did not have the podium turned around directly at her, that sort of cuts both ways for you. That particular incident occurred at the beginning of the guilt or innocence phase. So it appears that they had begun making that accommodation before we're getting into sentencing, which is what the trial court or the district court's order addresses. Did I say that on time? Yeah. Okay. We'll hear you on rebuttal. All right. Ms. Vann? Is it Vann or Vaughn? It's Vann, Your Honor. Okay. Thank you. Thank you. May it please the court, as you understood, this is a highly unusual case where everyone involved noticed that there was a hearing problem with this juror. The district court properly found that the service of this juror, who admitted that she missed portions of the trial testimony, was a violation of Mr. Bryan's right to a fair trial. Ms. Vann, you're breaking up. Just a minute. I'm having trouble because you're breaking up. I don't know if there's something we can do. It appears that the Internet is fine. Can you hear me now? I can hear you, but it's jerky movement and jerky sound. That's going to be with her Internet connection, sir. So, Ms. Vann, are you home? I'm at the office. You're at the office? Okay. I don't know if you're on wireless or if you have a wired connection, but, yeah, you're breaking up a little bit. I'm on a 5G wireless. Oh, so you're not connected to the office network. Okay. So, yeah, you're connected to your phone. That's probably your problem. Well, no, it's wireless Wi-Fi Internet at the office. Oh, okay, okay. I'm sorry to interrupt, Judge Niemeyer. Go ahead and try again, Ms. Vann. Sure. As your honors have recognized, this is a highly unusual case where everyone involved recognized that the juror was having hearing problems But, Ms. Vann, everyone involved did recognize that, but what about the fact that everyone involved ultimately concluded that, including the solicitor, the defense attorney, the judge, concluded that she should remain on the jury? Given the deferential standard here, how does that not really hurt your argument? I think what's important here is that Mr. Bryant had a right to be tried by an unimpaired jury where the jurors were able to hear all of the evidence. The findings by the trial court and the solicitor who are recognizing her problems throughout the trial show that she was not hearing all of the testimony. And, in fact, she admitted that she did not hear all of the testimony. The African-American juror from the jury does not trump the fact that he did not have a jury that was able to reach a verdict on the evidence that was presented. So let me ask you a question, and you are still somewhat breaking up, but I think we're catching most of what you're saying. I should say we're catching material parts of what you're saying. I apologize, Your Honor. We are here not on the direct appeal, and you well know, far better than I will ever know, the deferential level of review to give to these matters here. So there's a fundamental question here that we can keep saying she couldn't hear this and you had to move the podium and things like that, but that's not really the issue that we deal with in a habeas capital appeal. It's a very, very high burden that we have here to deal with from your perspectives. Address it specifically there because I don't want you to spend your time talking about the hearing problem and sounding like it is going somewhere when, at the end of the day, that's the issue we're going to address, and we're going to have to address it knowing just how limited we are as a federal court and looking back at that state court on this. And it's not my law. It is the law, and you are bound by that on this type of appeal. Yes, Your Honor. I think that is very important, and that is what we should focus on. So 2254-D2 allows this court to grant habeas relief where there has been an unreasonable finding of facts by the state PCR court, and that is exactly what happened here. The state PCR court found that she heard all of the testimony at the guilt phase. Well, hold on a minute. Hold on a minute. Where do you get that principle that a jury has to hear all the evidence? We had a case, the Johnson case. I think a jury missed the whole opening statement, and we said it was all right. So where is this all of the evidence as opposed to just in the context, are you saying that material, a finding that she heard the material testimony is not good enough, she has to hear all? Is that your contention? No, my contention is that the state PCR court made a finding that she heard all of the testimony, but she admitted that she did not hear all of the testimony. I thought he used the word material. I thought he used the word material. You heard me speak to Mr. Ross about that, and it was a clarification. What did you mean? Are you reading that the same when you said miss material that they're talking about now, like everything as opposed to material testimony, an adjective? No, Your Honor. In the paragraph before he makes the finding on all material, which we don't know if he means material evidence or just all material, he says that juror Jones testified she heard all testimony during the guilty phase and that she was able to compensate for her hearing deficiencies. So that's another point I wanted to make is that she was not able to compensate for her deficiencies. The accommodations that were supposedly in place did not work. For example, they were trying to make an accommodation for her to be able to read lips, but the trial judge noted that there were times when counsel and the witnesses were not turned toward the jury box, so she could not have read their lips. Additionally, the juror actually admitted that there were times where she didn't know where to look to know who was speaking. So she would be looking back and forth between counsel and the witnesses and would only be able to pick up on the end of the testimony or on the end of the question. So she's missing things throughout the course of the trial. So on that point, she did testify during the guilt phase that she heard testimony, all the testimony. But beyond that, if the issue here is whether she in fact did miss something, isn't that burden really on you? And you didn't present any type of doctor's testimony, and don't we have to defer to the trial court's apparent conclusion that she could still serve? Well, the trial court did not make another finding of qualification. The trial court was going through. The judge found that she did not hear the question that was asked about the blue dress. It's not that she didn't know if it was blue or not. She admitted that she did not hear that question. Well, but my point, at least the question I'm asking, and I'm not being argumentative, is the trial court, you know how many times we've ever said that the court is in the position to evaluate the witness, to see them face-to-face and determine all of that? Given that, if you want to challenge that, it seems like to me you might would have brought in a doctor or someone to present some testimony beyond a concluding statement that, well, it didn't happen. Well, there was a doctor's statement at PCR with doctor's records about her hearing problems. The husband did come in during the PCR hearing and testify about her hearing problems dating back to the 1980s, well before this trial happened. But what about Mr. Ross indicated that the juror herself was present at the PCR hearing but was not called? What about that? Her point that you made when Mr. Ross was speaking was that the juror can't know what she wasn't hearing. Also, it's very clear from the testimony at trial and from the husband's testimony that she's not being forthcoming about what she's missing, and she's reluctant to provide that information to the court. Can you call that jury on the soft counter law to testify? I agree. That also would be asking a juror to testify about deliberations would be a violation of evidentiary rules. So under the evidentiary rules, the best testimony was presented, and I think the trial record itself is very important because this is continuing throughout the trial showing that the accommodations are not working. I just want you to touch on the last point, and then I'm going to move and let my colleagues take it from there. But this burden that you have to move forward on this, it would seem to me that given where you are, her statement during the guilt phase and all of the other things here, the trial court's face-to-face analysis of looking at it, that then that burden on you would say, well, let me bring in her audiologist or a doctor or someone who can tell you that someone with this kind of disability would not be able to do that. I mean, doesn't it seem reasonable that you would at least have to bring in something of that nature to challenge it once that burden is on you? And the burden is on you, right? The burden is on the petition. That is correct, right? Yes, Your Honor. Yes. At PCR, the husband testified that when she's standing in the same room and he asked for something, she didn't hear him. But I think it – Well, I mean, that's good lay testimony. That's what you got anyway. You got counsel and everybody saying that. I'm saying if the burden's on you, then it's a pretty powerful thing to bring in a doctor who knows about hearing and says, a person with this, we know, I know this from her, she would not be able to hear from that distance or hear that. I'm not saying it would compel a result, but it would seem to me that a burden on your part would probably minimally require something like that. Well, I think the burden in habeas is to show that the state PCR court made unreasonable findings, and that is what we have shown. It's a little bit more than made unreasonable findings. I mean, that sounds pretty benign. That language is a little stronger than that. Well, that 2254D2 requires that there be – you can grant habeas relief if the state court made unreasonable determinations of fact, and that is what happened here. And just to clarify, Ms. Vann, is the unreasonable determination of fact that you're talking about, at least one of them, where the PCR court found that, quote, juror 342 testified that she heard all testimony during the guilty phase, when in fact the record bears out that she did not? Yes, Your Honor. It's contrary to the evidence in the record. Is there anything else? Is there any other statement or finding that is an unreasonable determination of fact in your view? Yes, Your Honor. Then the court goes on to say the trial court also took specific measures to ensure the juror could hear the testimony. The trial court attempted to do that, but the accommodations really did not work in this case. The trial court found that when the judge was speaking directly to the jury, raising her voice and focusing, the juror knew to look at the judge to read lips. She still missed questions. And the trial judge then said, well, also, you know, I know there have been people who have been speaking more quietly than I have. I know that there have been times when people have not been looking directly at the jury box. And so there are findings from the trial court in the record that are contrary to what the PCR court found. The real problem here is not that people didn't notice that she was having hearing problems. The trial judge noticed she was having hearing problems. The solicitor noticed she was not hearing all of the testimony. And in fact called her apparently deaf and said it's clear that she's missing some of the testimony. The problem is that they didn't do the right thing. Under the Supreme Court law, a jury has to be competent and has to be able to render a verdict on the evidence that is presented to it. And so when the juror was not able to hear all of the evidence that was presented, the verdict cannot possibly be on that evidence that was presented in the trial court. And so this is a violation of Mr. Bryant's right to a fair trial. This is a structural error because we cannot tell exactly how much she missed. This juror really should not have been sitting. It's more or less like Mr. Bryant only had 11 jurors. And so this case should be remanded for a new sentencing hearing. There are additional unreasonable determinations of fact on ineffective assistance of counsel claims. The state PCR court found that the trial counsel only wanted to keep her because he did not like the alternate and because he did not approve of the way that the jury selection was done via paper strike. But the record is clearly contrary to those findings as well. Related to the alternate, the trial counsel said that he understood if he had wanted removal of the juror, the judge would have granted a mistrial. And so the alternate really didn't come into it. And that's what he testified to at PCR. So this is clearly contrary to what the strategy for not removing the juror. As far as jury selection, as the district court properly found, it was an invalid inference that he didn't like the jury selection process, and so he didn't want to remove this juror because the only way to get a new jury selection process would be through a mistrial, which he believed would be granted. The state attempts to rely on Mr. Bryant's acquiescence to keeping the juror on the trial, but that cannot be relied on because that was not a finding that the state PCR court made. So that does not work under Wilson versus Dell, which requires that this court review what the state PCR court knew and did. And also the client is not the determining factor of what is adequate, effective representation and who should be on the jury. That was the decision that trial counsel should have made, and they made the wrong decision. If there are no other questions, I will thank you for your time and ask that you affirm the district court's ruling. Thank you. All right, we'll hear from Mr. Ross. We're looking at ground two, the ineffective assistance of counsel claim. It's important to note we're dealing with double deference here. Deference under 2254B, deference under Strickland. And in this particular case, it's clear that trial counsel acted strategically. He knew that he didn't want to request. He knew he wanted this juror on the jury, and had he sought her removal, he would have likely been placed with an alternate that he didn't like. So if he had pressed the issue, if he had actually asked to have that juror. Wouldn't it have been a mistrial rather than a replacement? Certainly not entirely clear how the trial court would have ruled. The solicitor, when he made his objection, he asked to replace the juror. He notes that we've got two capable alternates here, why not just use one of them? So it's completely speculative to assume that the trial court would have gone the mistrial route as opposed to replacing the juror with an alternate. And if you're sitting in trial counsel's shoes at that time, you definitely can't take it to the bank that the judge is going to give you a mistrial as opposed to putting an alternate on the jury. And you certainly can't take it to the bank that any issue like that would be overturned on appeal. So it's very likely that that trial attorney who's making that decision in the heat of the moment is going to make the call that I want to stick with this juror who I think is better for my case as opposed to flip a coin and get somebody I don't like, and that may be affirmed on appeal. Well, the PCR court didn't directly address that issue of whether the counsel should have asked for a mistrial. How should we deal with that? The PCR court specifically said he acted reasonably based on his assessment of the alternate juror. So implicit in that finding is during the PCR hearing, trial counsel's testimony as to why he wanted that juror there. So when the PCR court made the finding that it was based on his assessment of that alternate juror, that's in relation to the juror that was sitting, Ms. Jones, the one with the alleged hearing impairment, and in relation to what would happen next. So in addressing the alternate juror, the PCR court was addressing those other issues implicitly. It's implicitly finding that it was reasonably... corrupted the jury or there was something that got the jury on the wrong track. If a juror gets sick or dies, you just put on an alternate, and if a jury can't hear, I would assume that's the same thing. That's correct, and there's some state precedent to that effect. State versus Kelly, which is 502 Southeastern 2nd 99, dealt with an issue of juror misconduct at the sentencing phase. After they'd already deliberated on the guilt or innocence phase, and that... Misconduct could also lead to a mistrial. I mean, a jury could be infected. My point is if everybody's listening, but one person didn't hear anything, then it's the alternates were listening, and you could replace the juror with another juror without affecting the evidence for guilt or innocence. In other words, a mistrial wouldn't seem to be required in that circumstance. But that's... As Judge Wynn said, that wasn't decided by the PCR court. Well, it's... There certainly is precedent, and Your Honor, I see my time is up. If I may just complete my thought. Yes. There is precedent that you can replace an alternate at the sentencing phase. That's the Kelly case I just mentioned. That's why we have alternates in the first place. Okay. Thank you, Mr. Ross. I appreciate it, Your Honor. Ms. Vann. I just want to note, I understand you were court appointed, and I want to recognize that fact. We don't... I don't know how big our audience is, but everybody should know that that's an important service, and we depend on it. And I appreciate it very much. Your Honor, how did you get... Yeah. At this point, we customarily come down and greet counsel in these circumstances. I haven't figured out how that works, so we'll just have to greet you here on the Zoom. And thank you for your service to the court. We'll proceed on to the next case. Thank you very much. Thank you, Your Honor.
judges: Paul V. Niemeyer, James A. Wynn Jr., Stephanie D. Thacker